# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NATIONWIDE MUTUAL
INSURANCE CO.; and
NATIONWIDE MUTUAL
FIRE INS. CO.,
: No. 1:09-CV-1431
    Plaintiffs

v.

FREDERICK E. GARMAN,
    Defendant
: J. Rambo

# **MEMORANDUM**

On December 13, 2010, a half-day bench trial was held in the captioned matter. After considering the evidence presented, the court makes the following determinations.

## I. **Background**

### A. **Facts**

On August 1, 2008, a fire destroyed the home of James and Christina Morton (the "Mortons"). (Tr. Bench Trial, Dec. 13, 2010, at 11 (hereinafter "Tr. at __".) There is evidence to suggest that this fire was caused by the combustion of rags used by Defendant Frederick Garman to stain the Mortons' deck. Nationwide, as Garman's insurance agency, now asks the court to conclude that Garman was involved in a "business pursuit" when he stained the deck and, thus, Nationwide's policy precludes him from seeking coverage. For the reasons that follow, the court concludes that Garman was not engaged in a business pursuit when he stained the Mortons' deck.

Fred Garman is a special education teacher at the Lincoln Intermediate Unit No. 12. (*Id.* at 12.) He met the Mortons' when their daughter Katie, who has severe developmental disabilities, was one of the special needs students assigned to him. (*Id.*)

When school was not in session, Garman would do some landscaping for the Mortons which included activities such as trimming hedges, planting, mulching, and other yard work related activities.[1] (*Id*. at 14.) Garman claims he undertook these jobs to both have an opportunity to spend time with his son, who would assist him, and also to stay busy in an effort to battle depression issues he tended to suffer when idle. (*Id.* at 65.) Regarding the work Garman did on the Mortons' property, both Garman and James Morton claim that Garman was reimbursed for expenses but did not charge an hourly rate or draw up any form of payment invoice.[2] (*Id.* at 48, 58, 68.) Garman was not considered a business associate by the Mortons, who instead classified him as a "family friend, [a] very close friend." (*Id.* at 47.)

In July of 2008, James Morton approached Garman about power washing and staining the deck while the Morton family was away on vacation. (*Id.*

---

[1] Evidence was presented regarding various landscaping endeavors undertaken by Garman with other individuals in the community. In some instances, invoices were drawn up and hourly work rates were discussed, although Garman claims the invoices were only for material reimbursement and a minimal labor charge. (*Id.* at 26.) In addition, Garman proffered evidence showing how many times he had volunteered his services to various persons and programs in the community. Instead of analyzing the individual deeds of Mr. Garman throughout the relevant time period, the court will instead focus on the unique relationship between Garman and the Morton family in deciding whether Mr. Garman was, in fact, engaged in a business pursuit, or acting for a non-financial purpose.

[2] In deposition testimony, Garman claimed he was paid about $2,000 for this work. However, the only physical evidence of payments either party was able to introduce was for approximately $460, and James Morton testified that he did not believe he paid Garman as much as $2,000. Furthermore, Garman testified at trial that he only recalled receiving one check from the Mortons. (*Id.* at 19, 49.)

2

at 29.) The Mortons wanted it to be done while they were away because there was some concern about the impact the harsh chemicals in the stain would have on Katie's health, as she was easily susceptible to seizures. (*Id.* at 51.) Garman did not approach the Mortons about staining the deck. (*Id.* at 50.) There was no discussion of payment for the landscaping work Garman did for the Mortons or for the work on the deck. (*Id.* at 36.) Garman testified that he was not expecting to be paid for this work, and James Morton believed Garman was doing the work as a friend and did not expect to pay him. (*Id.* at 52, 56, 58.)

In July of 2008, Garman undertook to stain the Mortons' deck while they were away. (*Id.* at 29.) Garman knew nothing about decks and was not entirely sure what exactly he would need so James Morton provided all the materials, including the power washer and stain. (*Id.* at 32.) First, Garman applied a pre-wash to the deck, which he let rest before power washing the entire deck. (*Id.* at 32.) Garman then applied the Penofin product supplied by James Morton. (*Id.*) Although Garman was unfamiliar with the products and with the process needed to stain a deck, he did not feel as though the Penofin was properly removing the old varnish. (*Id.*) Garman decided to repeat the process using Olympic power wash cleaner which he bought and applied. (*Id.* at 33.) He then left for the day to give the deck time to dry. (*Id.* at 34.) Garman returned the next day to reapply the stain, bringing with him some old towels to wipe up any excess stain when he was done. (*Id.*) On the third day he returned and noticed that it had rained, so using the same towels he had used to wipe the stain, he wiped up the water that had accumulated on the deck. (*Id.* at 35.) Before leaving for the day, Garman cleaned up and put the towels in the garage. (*Id.*) The following Saturday, Garman received a call from James Morton saying that the Mortons' home had burned down. (*Id.* at 36.) The damaged to the Mortons' property is in excess of 1.25 million dollars. (*Id.* at 43.)

3

**B.     Garman's Insurance Policy**

In May of 2008, Garman was issued a Homeowners insurance policy by Nationwide Insurance Company ("Nationwide").  (Pls.' Ex. 1, Homeowners Policy Declarations.)  The relevant section of the policy states as follows:

> We will pay damages an insured is legally obligated to pay due to an occurrence resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property.  We will provide a defense at our expense by counsel of our choice.  We may investigate and settle any claim or suit.  Our duty to defend a claim or suit ends when the amount we pay for damages equals our limit of liability.

(*Id.*)

In addition, Garman had an Umbrella policy which provided excess liability coverage and states, in relevant part:

> We will pay for damages an insured is legally obligated to pay due to an occurrence in excess of:
>     a) the retained limit; plus,
>     b) any other liability insurance available to an insured which applies to an occurrence.

(Pls.' Ex. 2, Personal Umbrella Policy Declarations.)

Both policies contain exclusions if the insured is involved in a "business pursuit" at the time a policy triggering incident occurs.  Under the Homeowners policy, coverage will not attach to activities "arising out of business pursuits of an insured."  (Pls.' Ex. 1, Homeowners Policy Declarations.)  However, this exclusion does not apply to "activities normally considered non-business."  (*Id.*)  The Umbrella policy has similar language which excludes coverage for: "An occurrence arising out of the business pursuits . . . " of an insured.  (Pls.' Ex. 2, Personal Umbrella Policy Declarations.)  The Homeowners policy defines "business" as follows:

> "BUSINESS" includes trade, profession, occupation, or employment including self-employment, performed on a full-time, part-time, or temporary basis.  Business also

4

> includes any occasional business pursuits of an insured,.
> including ownership of rental property. . .

(Pls.' Ex. 1, Homeowner Policy Declarations.) The Umbrella policy exclusion mirrors the first sentence of the Homeowners policy exclusion. (*See* Pls.' Ex. 2, Umbrella Policy Decelerations.)

### C. Procedural History

On July 23, 2000, Nationwide filed a declaratory judgment action, (Doc. 1), against Garman asking the court to determine that Garman was engaged in a "business pursuit" at the time he left the rags in the Mortons' garage, and thus is not entitled to coverage. On December 13, 2010, a bench trial was held whereat Mr. and Mrs. Garman, James Morton, and various other neighbors testified. Both parties filed trial briefs and the matter is now ready for disposition.

## II. Discussion

In Pennsylvania, when construing an insurance policy, a "court must give unambiguous terms their 'plain and ordinary meaning.'" *Still v. Great N. Ins. Co.,* 254 Fed. App'x 125, 127 (3d Cir. 2007). Here, neither party argues, and the court does not believe, that the language of the "business pursuits" exclusion is ambiguous, therefore, the court will construe the contract according to the plain meaning of its words. *See St. Paul Fire & Marine Ins. Co. v. Lewis*, 935 F.2d 1428 (3d Cir. 1991).

"Business pursuit" exclusions are standard in most modern homeowners' insurance policies. *Still*, 254 Fed. App'x at 127 (referencing *Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431 (3d Cir. 2006).) The Third Circuit has determined that "[a]n activity is a 'business pursuit' when there is both

5

'continuity' - or customary engagement - in the activity, and profit motive." *Id.* (citing *Sun Alliance Ins. Co. v. Soto*, 836 F.2d 834 (3d Cir. 1988).)

In the instant case, Nationwide has failed to establish either continuity or profit motive. There is absolutely no evidence on the record that Garman had engaged in any activities related to deck staining on previous occasions. In fact, the record suggests this was Garman's first time staining. Even if the court were to conclude that the previous landscaping which Garman had done was somehow sufficiently related to deck staining to be construed as the same type of activity, there is nothing to indicate a profit motive. Both Garman and James Morton testified credibly that there was no discussion or expectation of payment with regard to the deck staining process. Garman was considered a close family friend who had cared for the Mortons' disabled child for years. When Garman was asked to stain the deck, he gladly accepted the project so that he could help the Morton family in a way that would benefit Katie who was receptive to learning out on the deck, and also improve his own mental health by alleviating his depression.

Nationwide asks the court to apply "common sense" and reach the conclusion that, contrary to the testimony presented, "a schoolteacher working odd jobs in the summer does not clean and stain decks for vacationing wealthy professionals, for free." Although the court understands, especially in the litigious realm in which it operates, that it is easy to adopt this "nothing comes for free" mentality, in the instant case that would require the court to discredit the facts presented and a create defense for Nationwide completely unfounded in the record.

The court is not presented with the question of whether or not Garman's various other landscaping projects, in which he drew up invoices and discussed hourly labor wages, would be considered "business pursuits" under the policy. Therefore, the court makes no conclusion on this matter. Instead, based on the

record before it, there is a clear indication that the relationship between Garman and the Morton family was both close and unique, and the court is unwilling to discredit the testimony presented and come to the conclusion that the staining of the Mortons' deck was a "business pursuit" with a "profit motive." As such, the court concludes that the "business pursuits" exception does not apply to the facts of this case, and Nationwide's declaratory judgment action will be denied.

**III.     Conclusion**

For the reasons stated above, the court concludes that Garman was not engaged in a "business pursuit" as defined by both his Homeowners policy and the Umbrella policy, and thus, Nationwide is not released from liability coverage based on this exception. An appropriate order to issue.

s/Sylvia H. Rambo
United States District Judge

Dated: February 7, 2011.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NATIONWIDE MUTUAL : 
INSURANCE CO.; and : 
NATIONWIDE MUTUAL : No. 1:09-CV-1431
FIRE INSURANCE CO., : 
      Plaintiffs : 
        : 
  v. : 
        : 
FREDERICK E. GARMAN, : 
      Defendant : J. Rambo
        : 

## **O R D E R**

For the reasons stated in the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT** judgment is granted in favor of Defendant and against Plaintiffs because the court has found that the "business pursuits" exclusion in the homeowners policy does not apply to the facts before the court. The Clerk of Court shall enter judgment and close this case.

                                                s/Sylvia H. Rambo
                                            United States District Judge

Dated: February 7, 2011.